UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KIRSTEN MAZZANTI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:16-CV-832-PLC |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff Kirsten Mazzanti seeks review of the decision of Defendant Nancy Berryhill, Deputy Commissioner of Operations, Social Security Administration (SSA), denying his application for a period of disability and Disability Insurance Benefits under the Social Security Act.[1] (ECF No. 1). ). Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's applications.

### I.   *Background and Procedural History*

On November 26, 2013, Plaintiff filed an application for a period of disability and Disability Insurance Benefits claiming that she was disabled as of January 1, 2010 due to: disc degeneration, obsessive compulsive disorder, neck issues/arthritis, fibromyalgia, migraines, anxiety, manic depression, irritable bowel syndrome, and post-traumatic stress disorder. (Tr. 182). The SSA denied Plaintiff's claims, and she filed a timely request for a hearing before an administrative law judge (ALJ). (Tr. 80, 87-88).

---

[1] The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636 (c). (ECF No. 10).

1

The SSA granted Plaintiff's request for review, and the ALJ conducted a hearing in October 2014. (Tr. 100). In a decision dated February 24, 2015, the ALJ found that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from January 1, 2010, through the date of this decision." (Tr. 23). Plaintiff subsequently filed a request for review of the ALJ's decision, which the SSA Appeal's Council denied. (Tr. 1, 6). Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as Defendant's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## I. The Administrative Proceeding

### A. Testimony at Hearing

Plaintiff appeared with counsel at the administrative hearing in October 2014. (Tr. 33). Plaintiff was thirty-nine years of age and testified that she was 5'10", weighed 225 pounds, and relied on her husband as her current source of income. (Tr. 35-37). Plaintiff stated she worked several years after her purported January 2010 onset date in retail and in home healthcare as a certified nursing assistant. Plaintiff could not remember when she last worked but explained that her back pain, fibromyalgia, migraines, and mental impairments eventually prevented her from working. (Tr. 38, 45).

Plaintiff believed her back pain began in 2010, and she received treatment from her primary care physician (PCP), Dr. Patricia Hinkle, and chiropractor, Dr. Ryan Moeckel. Other than Neurontin, muscle relaxers, and a breast reduction to "alleviate some of the weight," Plaintiff received no other treatments. (Tr. 47). She alleged she was "narcotic sensitive," so she "took [herself] off all [her] narcotics." (Tr. 48). Plaintiff recalled Dr. Moeckel restricted her to lifting no more than ten pounds or a gallon of milk and taking a break every thirty minutes. (Tr.

55-56). Additionally, Plaintiff stated that she was unable to carry laundry up and down the stairs or wash more than a few dishes at a time. (Tr. 56).

Plaintiff testified that her mental impairments "became an issue" for her when she was nine years old and, from that point on, she was treated "off and on" her entire life. She stressed her anxiety prevented her going anywhere. (Tr. 58). She did not belong to any organizations or attend family events because she could not "deal" with "going out in public" or being around large groups of people. (Id.).

In 2010, Plaintiff received counseling from a psychologist for "maybe a year and a half." (Tr. 50). During that time, she also saw a psychiatrist who prescribed her medication. (Tr. 51). At the time of the hearing, her PCP, Dr. Hinkle, was providing Plaintiff's mental health treatment and prescribing a small dose of Klonopin. (Tr. 53). Plaintiff testified that Dr. Hinkle previously prescribed her Xanax and other antidepressants, but they caused adverse reactions because she was "very medication sensitive[.]" (Id.). Plaintiff had scheduled a post-trial appointment with Dr. Hinkle to "try for another medication." (Tr. 54).

### B. *Relevant Medical Records Before the ALJ*

The earliest evidence of Plaintiff's depression appears in a report from a May 2009 visit to a family doctor. Plaintiff's "constant and overwhelming" symptoms included "[an] anxious mood, decreased appetite, insomnia, crying spells, decreased ability to concentrate, fatigue, guilt, sadness, feelings of worthlessness, [f]rustration and tendency towards indecisiveness." (Tr. 354). She admitted having suicidal thoughts but was not taking any antidepressants. (Id.). The doctor diagnosed her with depression and prescribed Zoloft.

Plaintiff's first record of back pain was from a visit to her chiropractor, Dr. Moeckel, in January 2010. Dr. Moeckel diagnosed her with lumbar subluxation. (Tr. 496). In addition to

seeing Dr. Moeckel, Plaintiff saw Dr. Hinkle several times later in the same year. Plaintiff did not mention back pain at an appointment in August but complained of back pain in September and October. (Tr. 376-79, 382, 384). Plaintiff stated she was seeing Dr. Moeckel and reported "some pain relief" as his treatment was "helping a little." (Tr. 385). Dr. Hinkle ordered x-rays of Plaintiff's lower back, which showed a "[m]oderate decrease in diskal height at the L1-2, L2-3 and L3-4 disks." (Tr. 392). In November, Dr. Hinkle prescribed Percocet because Plaintiff's "pain [worsened] with pretty much anything." (Tr. 394).

Treatment notes from a January 2011 visit to Dr. Hinkle's office revealed that Plaintiff was "positive for back pain" but "had been doing great [emotionally]." (Tr. 400). Plaintiff denied having suicidal thoughts. (Id.). She attributed this improvement to being able to work, which "[got] her out of the house." (Id.). Dr. Hinkle did not prescribe additional medication for depression or refill Plaintiff's past prescriptions.

Plaintiff did not return to Dr. Moeckel until February 2011, at which point he diagnosed her with lumbar and thoracic radiculitis, sacral/coccyx subluxation, and thoracic subluxation in addition to the lumbar subluxation. (Tr. 496). In April 2011, Dr. Hinkle noted Plaintiff experienced "some pain relief with rest and [P]ercocet." (Tr. 394, 408). Later that year, Plaintiff returned to Dr. Hinkle with complaints of back pain and disclosed that she did "a lot of lifting at work." (Tr. 411). Dr. Hinkle refilled Plaintiff's Percocet prescription in April 2011. (Tr. 428).

Dr. Shajitha Nawaz, a psychiatrist, treated Plaintiff throughout 2011. In April, Dr. Nawaz performed a psychiatric evaluation. She noted Plaintiff was hospitalized twice as a teenager for psychiatric reasons. She also discussed Plaintiff's history of drug abuse. In May, June, and August reports, Dr. Nawaz noted Plaintiff exhibited borderline personality traits.

4

In November 2011, Plaintiff presented to Dr. Hinkle with anxiety and "classic migraine." (Tr. 429). Dr. Hinkle noted that Plaintiff's anxiety disorder "was originally diagnosed 1/2011" and her symptoms included constant "chest pain, dry mouth, light-headedness, palpitations, and shortness of breath." (Tr. 429). She claimed "[m]arital discord, crowds or public places, and—everything" triggered her anxiety. (Id.). Plaintiff did "not feel like she has been getting any benefit from current counselor and psychiatrist." (Tr. 432). Dr. Hinkle prescribed Xanax. (Id.).

At a follow-up appointment in January 2012, Plaintiff reported she "[was] doing really, really well with [C]elexa." (Tr. 438). Dr. Hinkle continued Plaintiff's prescription of Celexa and noted that Plaintiff also took Xanax "if she is going into a social situation that will usually cause a panic attack or occasionally to sleep." (Id.).

In April 2012, Plaintiff visited Dr. Hinkle because she "[had] been lifting and bending over a lot for the past couple of weeks," which caused back pain. Plaintiff was working full-time at a new job. Dr. Hinkle recommended heat and ice therapy along with rest. (Tr. 443). Dr. Hinkle noted no changes in Plaintiff's depression and anxiety medication or mood.

Plaintiff returned to Dr. Hinkle's office in April, September, and November 2012. In December 2012, Plaintiff reported "she is still having pains," including "pains showing down her legs L>R. She feels like the L leg will go out on her at times." (Tr. 449). In regard to her mental health, Plaintiff was "doing well." (Id.).

In February 2013, Plaintiff presented to Dr. Moeckel after she injured her lower spine lifting a 250-pound patient at work. (Tr. 497). Plaintiff described "severe constant sharp low back pain and remarkably severe constant shooting anterior pain in the left leg." (Id.). Dr. Moeckel administered manipulation to T2, T3, L4, and RSI and electrical muscle stimulation to the lumbar region. (Tr. 498). Dr. Moeckel advised Plaintiff to use cold packs, visit him three

times per week, and "not work," noting that she "has been placed on temporary total disability." (Id.).

Plaintiff saw an orthopedic surgeon in March 2013. He ordered x-rays and an MRI of her spine. The x-rays revealed Plaintiff suffered from "mild degenerative disc disease at L3 –L4," and the MRI showed "mild desiccation and disc space height loss seen at the L3-L4 level…remaining intervertebral discs are normal in appearance." (Tr. 303, 305).

Plaintiff returned to Dr. Moeckel in June 2013, complaining of pain in her right hip, buttock, and thigh. (Tr. 498). After Dr. Moeckel administered manipulation and electrical muscle stimulation, Plaintiff's "pain decreased." (Tr. 499). Dr. Moeckel noted "patient [was] expected to reach maximum medical improvement." (Id.). The same month, Plaintiff presented to the emergency room at Barnes Jewish Hospital complaining of "pain radiating to the RLE," but she left before seeing a doctor. (Tr. 311-15).

Plaintiff followed up with Dr. Hinkle in November 2013 and reported "her anxiety is getting worse and she is really getting to the point of becoming reclusive. . . . She had an anxiety attack trying to drive her mother home. . . . She states she has been through counseling before and this has never really helped. She is not sure what to do." (Tr. 475). Plaintiff informed Dr. Hinkle that she "has not been on medications recently and ran out of Xanax," and Dr. Hinkle explained that Plaintiff must continue taking her medications, "especially when there are things that trigger flare ups." (Tr. 477). Dr. Hinkle refilled Plaintiff's Celexa. (Id.).

After reviewing Plaintiff's records, Dr. Marsha Toll, a state agency psychological consultant, completed a psychiatric review technique and mental residual functional capacity (RFC) assessment in February 2014. (Tr. 71-73, 75-76). Dr. Toll considered the effects of

6

Plaintiff's depression and anxiety and concluded Plaintiff "retain[ed] [the] capacity to perform work but limited social contact would be less distracting and stressful for [Plaintiff]." (Tr. 76).

At an appointment with Dr. Moeckel in March 2014, Plaintiff stated she had been "cleaning a lot and staying busy." (Tr. 499). Dr. Moeckel noted that Plaintiff's "pain in the right buttock is a little improved over the last treatment and the pain in the right thigh is slightly better since the last treatment." (Tr. 500).

Plaintiff followed up with Dr. Hinkle the same month and complained of anxiety, depression, back pain, and chest pain. (Tr. 512). Plaintiff reported recent life stressors, and Dr. Hinkle observed that Plaintiff's "depression and anxiety has obviously gotten worse with recent events." (Tr. 515). Dr. Hinkle advised Plaintiff to "start back on Celexa" and prescribed Klonopin. (Id.).

Plaintiff presented to Dr. Hinkle in August 2014 with continued depression and anxiety, as well as insomnia and chronic back pain. (Tr. 504). Plaintiff's symptoms were "nearly constant." (Id.). Dr. Hinkle provided Plaintiff a trial of Savella "to see if it can help with moods, fibromyalgia and chronic pain syndrome," refilled Plaintiff's Klonopin, and prescribed Ambien. (Tr. 507).

Dr. Moeckel completed a medical source statement (MSS) – a preprinted checklist evaluating Plaintiff's physical abilities – for Plaintiff in September 2014. (Tr. 491-93). Dr. Moeckel noted that Plaintiff suffered "lumbar sacral pain and leg pain bilateral." (Tr. 491). His treatments included chiropractic adjustments and "some physio therapy." (Id.) Dr. Moeckel opined that Plaintiff could frequently lift or carry ten pounds and rarely lift or carry twenty pounds. He also found that Plaintiff could occasionally twist or stoop, rarely crawl or reach, and

7

never climb, and she was able to sit or stand for thirty minutes at a time for no more than four hours total per workday. (Id.).

At a follow-up appointment in October 2014, Dr. Hinkle observed that Plaintiff "has not responded to many medications" and "is really having a hard time sleeping." (Tr. 521). Dr. Hinkle prescribed Seroquel. (Id.).

## II. *Standard for Determining Disability under the Act*

To obtain disability benefits under the Act, a claimant must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step sequential evaluation. See 20 C.F.R. § 404.1520. Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities; or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

## III. *The ALJ's Determination*

The ALJ determined Plaintiff: (1) had not engaged in substantial gainful activity since June 2012; (2) had the severe impairments of cervical and lumbar degenerative disc disease, anxiety, and depression; (3) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) had the RFC to perform light work, as defined in 20 C.F.R. 404.1567(b), with the following limitations:

> [Plaintiff] can frequently climb ramps and stairs, but only occasionally climb ladders, ropes, and scaffolds. [She] can frequently balance, and occasionally stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to extreme cold, extreme heat, and unprotected heights, as well as concentrated use of moving machinery. [Plaintiff] should have only occasional interaction with the public and co-workers.

(Tr. 12-16). The ALJ found that the RFC was "supported by the medical evidence of record, as well as the opinion of the [s]tate agency psychological consultant and the claimant's work and reported activities during the relevant period." (Tr. 17).

At step four of the sequential evaluation, the ALJ considered the extent to which underlying physical and mental impairments, that could reasonably be expected to produce Plaintiff's pain or other symptoms, limited her functioning. In regards to the physical impairments, the ALJ concluded that "the record as a whole [did] not support a finding that back pain…related to degenerative disc disease…prevented the claimant from sustaining a reduced range of light work on a consistent basis since the alleged onset date." (Tr. 17). More specifically, he found her "generally intermittent symptoms, conservative treatment, and normal gait and lower extremity strength through the majority of the relevant period detract[ed] from the credibility of her allegations of additional limitations." (Tr. 18). The ALJ acknowledged that Dr. Moeckel was not an "acceptable medical source" under the Social Security Act, but nonetheless

9

afforded Dr. Moeckel's opinion "some weight, to the extent it [was] consistent with the exertional and postural limitations in the [RFC]." (Tr. 20).

In regard to Plaintiff's mental impairments, the ALJ concluded that "the medical evidence of record…does not support a finding that the claimant's depression and anxiety would prevent her from performing work at a variety of skill levels, provided that she did not have more than occasional interaction with the public and co-workers." (Tr. 19). He afforded Dr. Toll's opinion "great weight" because he found it "consistent with the claimant's limited mental health treatment and the reportedly good response of her mood symptoms to medication use." (Tr. 21).

Even though the ALJ found that Plaintiff could not perform any past relevant work, he determined Plaintiff retained the RFC to perform other jobs existing in the national economy. Therefore, Plaintiff was not disabled within the meaning of the Social Security Act. (Tr.22-23).

## IV. *Standard of Judicial Review*

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quoting Boerst v. Shalala, 2 F. 3d 249, 250 (8th Cir. 1993)). In determining whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, a court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the finding and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

## V. Discussion

Plaintiff claims that substantial evidence does not support the ALJ's RFC. More specifically, Plaintiff contends that the ALJ erred in: (1) failing to properly consider the opinion of Plaintiff's long-time treating chiropractor; and (2) creating an insufficient mental RFC because it was not based on substantial evidence. (ECF No. 13 at 8, 11). Defendant counters that substantial evidence supports the ALJ's physical RFC and that Plaintiff failed to introduce evidence of additional, greater mental limitations than those included in the ALJ's mental RFC finding. (ECF No. 22 at 4, 10, 13).

### A. Physical RFC

Plaintiff argues that "the ALJ's analysis is flawed because his RFC differs from the limitations in Dr. Moeckel's opinion to which he afforded weight and he failed to explain the conflict." (ECF No. 13 at 8) Defendant counters that "substantial evidence supports the ALJ's reasons for not adopting the entirety of Dr. Moeckel's opinion." (ECF No. 22 at 8)

The Court first notes that a chiropractor is not an "acceptable medical source" under the regulations, but is rather an "other" medical source. 20 C.F.R. §§ 404.1513(a) & (d)(1). Thus, Dr. Moeckel was not a "treating source" whose medical opinion may be entitled to controlling

11

weight. See Tindell v. Barnhart, 444 F.3d 1002, 1005 (8th Cir.2006); Social Security Ruling 06–03p ("SSR 06–03p") (noting that "only 'acceptable medical sources' can be considered treating sources, as defined in 20 C.F.R. 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight."). In addition, "only 'acceptable medical sources' can give [the Commissioner] medical opinions." SSR 06–03p.

The opinion of an "other" medical source must be considered in accordance with SSR 06–03p. See 20 C.F.R. §§ 404.1513(d); SSR 06–03p, 2006 WL 2329939. In weighing opinions from other sources, an ALJ considers the length and frequency of the relationship, the source's specialty or area of expertise, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, and how well the source explains the opinion. Id. The ALJ has more discretion when evaluating an opinion from an other medical source than when evaluating an opinion from an acceptable medical source. Raney v. Barnhart, 396 F.3d 1007, 1009 (8th Cir. 2005).

Dr. Moeckel, Plaintiff's long-time treating chiropractor, completed a checklist form MSS for Plaintiff. (Tr. 491-93). Dr. Moeckel opined that Plaintiff could: frequently lift or carry ten pounds; rarely lift or carry twenty pounds; and never lift or carry fifty pounds. (Tr. 492). Additionally, Dr. Moeckel stated Plaintiff could: frequently crouch; occasionally twist or stoop; rarely crawl or reach; and never climb. (Id.). According to Dr. Moeckel, Plaintiff could sit or stand for thirty minutes at a time, for a total of four hours in an eight-hour workday. (Id.). Dr. Moeckel opined that Plaintiff needed to alternate at will between sitting, standing, or walking and required unscheduled ten-minute breaks every thirty minutes. Finally, Dr. Moeckel stated that Plaintiff would be "off task or slower" about twenty percent of the time and would miss work or leave early more than four days per month. (Tr. 492-93).

12

The ALJ reviewed Plaintiff's medical records and noted that "the majority of the claimant's treatment has been provided by chiropractor, [Dr. Moeckel]," who had "seen the claimant intermittently since January 2010[.]" (Tr. 18). The ALJ observed that Plaintiff's pain and radicular symptoms increased after a February 2013 injury she sustained lifting a patient at work, and Dr. Moeckel's findings of positive straight-leg raising on the left and painful range of lumbar motion were consistent with other treating physicians' clinical findings.

Based on all the medical records, the ALJ determined that Plaintiff had the RFC to perform "light work"[2] with the following limitations:

> [Plaintiff] can frequently climb ramps and stairs, but only occasionally climb ladders, ropes, and scaffolds. [She] can frequently balance, and occasionally stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to extreme cold, extreme heat, and unprotected heights, as well as concentrated use of moving machinery. [Plaintiff] should have only occasional interaction with the public and co-workers.

In determining the RFC, the ALJ assigned Dr. Moeckel's opinion "some weight, to the extent that it is consistent with the exertional and postural limitations in the [ALJ's] residual functional capacity[.]" (Tr. 20). However, the ALJ discounted Dr. Moeckel's restrictions relating to Plaintiff's ability to "reach, climb, and sustain work activity without the need for frequent absences and unscheduled breaks" because they "seem exaggerated and are not consistent with the record as a whole." (Id.). The ALJ reasoned: "[T]he relatively mild findings on lumbar spine studies over the past several years, together with the claimant's inconsistent, conservative treatment and generally high level of reported activity, weigh against a finding that she could be

---

[2] The SSA regulations provide: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

13

incapable of sustaining work at a light exertional level without the need for frequent breaks and absences." (Tr. 20-21).

Plaintiff claims that the ALJ erred because the limitations in the RFC differ from the restrictions that the ALJ credited in Dr. Moeckel's MSS. In particular, Plaintiff notes that, while the ALJ expressly rejected only Dr. Moeckel's limitations on Plaintiff's ability to reach, climb, and sustain work activity, the ALJ neither adopted nor discredited Dr. Moeckel's opinion with regard sitting/standing, lifting/carrying, remaining on task, and the need to shift positions and take breaks.

An ALJ "is not required to rely entirely on a particular [source's] opinion[.]" Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011). Furthermore, a court "review[s] the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation." McCoy v. Astrue, 648 F.3d 605, 615 (8th Cir. 2011). See also Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir. 2003) ("[T]he ALJ did not simply describe the RFC in 'general terms.' He made explicit findings and, although we would have preferred that he had made specific findings as to sitting, standing, and walking, we do not believe that he overlooked those functions.").

Here, the ALJ explained that he gave Dr. Moeckel's opinion "some weight, to the extent it is consistent with the exertional and postural limitations in the residual functional capacity[.]" Although the ALJ did not provide a function-by-function analysis, the ALJ found Plaintiff's exertional and postural limitations were less severe than stated by Dr. Moeckel.

Based on the administrative record here, the Court finds that the ALJ did not overlook any of Plaintiff's limitations and considered evidence that was relevant to Plaintiff's extertional and postural limitations. See id. The ALJ thoroughly reviewed and discussed Plaintiff's medical

14

records, including the objective evidence of Plaintiff's degenerative disc disease. The ALJ noted that x-rays in March and July 2013 "revealed only mild degenerative disc disease at L3-L4," and an MRI of March 2013 "demonstrated a mild disc bulge" and "mild face hypertrophy at L5-S1, but without significant neural foraminal or central canal stenosis at any level." (Tr. 17). The ALJ acknowledged that Dr. Moeckel and "several other providers," including an orthopedic specialist who evaluated Plaintiff in March 2013, observed "paraspinal muscle tenderness at times during the relevant period." (Tr. 18).

Despite this evidence, the ALJ reasoned that the record as a whole did not support a finding that her physical impairments "prevented the claimant from sustaining a reduced range of light work on a consistent basis since the alleged onset date." (Tr. 17). The ALJ explained Plaintiff's episodes of significant back pain were often "related to strenuous activities" and Plaintiff "generally described her symptoms as intermittent during routine visits with Dr. Hinkle." (Tr. 17) Additionally, Plaintiff's treatment was relatively conservative, as none of her providers recommended injections or surgery. The ALJ explained that Plaintiff's "generally intermittent symptoms, conservative treatment, and normal gait and lower extremity strength" undermined her allegations of disability. (Tr. 18)

The ALJ considered all of the evidence in the record to conclude that, while Plaintiff suffered severe impairments, her resulting limitations were not as severe as stated by Dr. Moeckel in the MSS.[3] Viewing the ALJ's opinion in light of the record as a whole, substantial evidence supports the ALJ's physical RFC assessment.

---

[3] Additionally, the Court notes that Dr. Moeckel provided little analysis in the MSS. The Eighth Circuit has held that "a conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration." Anderson v. Astrue, 696 F.3d 790, 794 (8th Cir. 2012) (quoting Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010).

### B. Mental RFC

Plaintiff argues that substantial evidence in the record did not support the ALJ's assessment of her mental RFC because the ALJ (1) improperly relied on the opinion of Dr. Toll, a non-examining psychological consultant and (2) failed to fully develop the record with regard to Plaintiff's mental impairments. In response, Defendant contends that "even without Dr. Toll's opinion, some medical evidence supported the ALJ's RFC finding," including the results of her mental status examinations, conservative course of treatment, improvement with medication, and "extensive daily activities and work activities."

Plaintiff correctly asserts that the opinions of non-examining or consultative sources do not, by themselves, constitute substantial evidence on the record as a whole. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010); Wildman v. Astrue, 596 F.3d 959, 967 (8th Cir. 2010). However, such opinions may properly be considered along with the other evidence of record. See Casey v. Astrue, 503 F.3d 687, 694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [the State agency medical consultant] along with the medical evidence as a whole.").

Dr. Toll, a state agency non-examining psychologist completed a psychiatric review technique (PRT) and RFC assessment for Plaintiff. (Tr. 71-73, 75-76). Dr. Toll diagnosed Plaintiff with "anxiety-related disorders" and opined that Plaintiff was: moderately limited in her ability to interact appropriately with the general public, accept instructions, and respond appropriately to criticism from supervisors; and not significantly limited in her ability to ask simple questions, request assistance, get along with coworkers or peers without distracting them, maintain socially appropriate behavior, and adhere to standards of neatness and cleanliness. Dr. Toll concluded that Plaintiff "[r]etains capacity to perform work but limited social contact would be less distracting and stressful for [Plaintiff]."

16

The ALJ assigned Dr. Toll's opinion "great weight," reasoning that Dr. Toll "reviewed all of the available evidence, and her opinion is based on that review, as well as her knowledge of the disability program and its requirements." (Tr. 21). In addition, the ALJ found Dr. Toll's opinion was "consistent with the claimant's limited mental health treatment and the reportedly good response of her mood symptoms to medication use." (Id.).

Plaintiff argues that the ALJ erred in assigning Dr. Toll's opinion great weight because Dr. Toll "referenced no more than four appointments of record addressing [Plaintiff's] mental health." (ECF No. 13 at 13). Plaintiff further asserts that records dated after Dr. Toll's evaluation reveal "increased depression and anxiety despite medications and medication changes." (Id.).

"As a state agency psychological consultant, Dr. Toll is a highly qualified expert in Social Security disability evaluation." Alie v. Berryhill, 4:16-CV-1353 JMB, 2017 WL 2572287, at *12 (E.D. Mo. June 14, 2017) (citing 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); Kammann v. Colvin, 721 F.3d 945, 951 (8th Cir. 2013)). Dr. Toll referenced four of Plaintiff's mental health records, the most recent of which was dated three months prior to Dr. Toll's February 2014 evaluation, and explained how those records suggested an ability to perform work with limited social interaction. See Brandes v. Colvin, No. 4:15-CV-1737 NCC, 2017 WL 168457, at *8 (E.D. Mo. Jan. 17, 2017) (state agency consultant was not required to detail every report he relied on in completing his analysis).

To the extent Plaintiff challenges Dr. Toll's opinion on the ground that it did not include later medical records, the Court's review of the record shows that Dr. Toll's report was consistent with the medical evidence as of her evaluation. See Casey, 503 F.3d at 694. Further, the ALJ acknowledged that Plaintiff's medical records revealed that her anxiety worsened in

17

2014 and found that the increased anxiety "related to a combination of acute family stressors and a tense political situation in her area[.]" (Tr. 20).

Plaintiff also argues that Dr. Toll's opinion is internally inconsistent because she stated that Plaintiff was only mildly limited in social functioning but opined that she was moderately limited in her ability to interact appropriately with the general public and accept instructions and criticism from supervisors. A review of the record reveals that, Dr. Toll also opined that Plaintiff was "not significantly limited" in her ability to get along with coworkers or peers. (Tr. 76). The Court finds no inconsistency between Dr. Toll's general conclusion that Plaintiff was mildly limited in social functioning and specific findings that she was moderately limited in regard to specific types of work-related interactions.

Plaintiff next argues that the ALJ neglected his duty to develop the record with regard to Plaintiff's alleged mental impairments because he did not order a psychological consultative examination. "While an ALJ does have a duty to develop the record this duty is not never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2001) (citing Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994)). "The ALJ is required to order medical examinations if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." Id. (citing Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986)). Further, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." Haley v. Massanari, 258 F.3d 742, 749-50 (8th Cir. 2001).

Here, the evidence in the record provided a sufficient basis for the ALJ's decision that Plaintiff was not disabled. With the exception of a period of time in 2011 during which Dr.

18

Nawaz provided Plaintiff's psychiatric care, Plaintiff did not routinely see a counselor or other mental health professional. Rather, Plaintiff received routine and conservative mental health treatment from Dr. Hinkle, her primary care provider. Additionally, Plaintiff's medical records reveal that, in January 2012, Plaintiff's mental health condition improved significantly with the use of Celexa and she did not complain of anxiety or depression again until November 2013. Plaintiff's increased anxiety in late 2013 and 2014 appeared to correspond with her failure take her medications as prescribed. A condition that is "controllable and amenable to treatment [ ] 'do[es] not support a finding of disability.'" Martise, 641 F.3d at 924 (quoting Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009)).

The ALJ also found that Plaintiff's increased symptoms arose from situational factors. "Situational depression does not support a finding of disability." Moss v. Berryhill, No. 5:16-CV-6127-NKL, 2017 WL 2364407, at *8 (E.D. Mo. May 31, 2017) (citing Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2005)). See also Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (depression resulting from financial difficulties was situational and not disabling); Cook v. Berryhill, 1:15-CV-182-NCC, 2017 WL 1132342, at *7 (E.D. Mo. March 27, 2017) (situational depression is not disabling); Shipley v. Astrue, No. 2:09-CV-36-MLM, 2010 WL 1687077, at *12 (E.D. Mo. April 26, 2010) (same).

In addition to the medical evidence, the ALJ considered Plaintiff's daily activities and work history and found they undermined her allegations of disability. In particular, the ALJ noted that Plaintiff's admitted ability to provide emotional support to and engage with family members suggested an ability to maintain some social interaction. The ALJ also properly considered that Plaintiff "held a number of short-term and part-time nursing and home health care positions" after her alleged onset date. See 20 C.F.R. 404.1571 ("The work . . . that [a

claimant has] done during any period in which [she] believe[s] [she is] disabled may show that [she is] able to work at the substantial gainful activity level."); Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004).

In sum, the evidence in the record provided a sufficient basis for the ALJ to assess Plaintiff's mental impairments, and substantial evidence supported his determination that Plaintiff was capable of work "with only occasional interaction with the public and coworkers." The ALJ did not err by failing to develop the record.

### *VI.  Conclusion*

For the reasons set forth above, the Court finds that substantial evidence in the record as a whole supports the ALJ's conclusion that Plaintiff is not disabled.  Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED.**

A separate judgment in accordance with this Memorandum and Order is entered this date.

                                                                        _____
                                                                        PATRICIA L. COHEN
                                                                        UNITED STATES MAGISTRATE JUDGE

Dated this 1st of August, 2018